DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Elinor Sturgill, appeals the decision of the Summit County Court of Common Pleas granting summary judgment in favor of appellee, Preferred Capital, Inc. This Court affirms.
 I. {¶ 2} Appellee is a commercial equipment leasing and finance company that provides financing options for businesses that want to purchase commercial equipment. Credit Card Company ("CCC") is an equipment vendor that developed an aggressive distribution program selling, installing and servicing ATM's. CCC's market included convenient stores, gas stations, and other similar businesses. Appellee and CCC entered into a "Vendor Finance Program and Remarketing Agreement" whereby CCC would sell, distribute and service ATM's and appellee would provide only financing to qualified CCC customers. Pursuant to their agreement, CCC would obtain all of the credit information from the customers buying the equipment, as well as their signatures on the credit applications and lease agreements.
 {¶ 3} Defendants Lang Huynh and Huynh Grocery, Inc. dba Woods Grocery and appellant contracted with CCC to buy an ATM. In their contract, CCC was responsible to the defendants and appellant for the service, maintenance, and warranties on the ATM. In a separate contract between appellee and the defendants and appellant, appellee purchased the ATM that the defendants had chosen from CCC for the sole purpose of financing the ATM to the defendants and appellant through a statutory finance lease agreement. The lease required the defendants to make 60 monthly payments of $269.00 plus tax to appellee. Appellant signed as a personal guarantor to the finance lease.
 {¶ 4} CCC later filed for bankruptcy and stopped servicing the ATM for the defendants and appellant. After making six of their 60 lease payments to appellee, the defendants refused to tender any further lease payments to appellee. Appellee filed suit against the defendants and appellant for breach of a commercial lease and individual guarantee in December of 2002. Appellant filed her answer and counterclaim, as well as a "Motion to Transfer Action for Improper Venue" in January of 2003. Appellee filed a brief in opposition to appellant's transfer of venue motion, and the trial court denied appellant's "Motion to Transfer for Improper Venue" on January 29, 2003. Appellant filed a motion for reconsideration, appellee filed another brief in opposition, and the trial court denied appellant's motion for reconsideration on March 26, 2003, again holding venue was proper.
 {¶ 5} Appellee had obtained a default judgment against Mr. Huynh and Huynh Grocery, Inc. dba Woods Grocery on February 28, 2003. However, Mr. Huynh filed for bankruptcy protection and provided notice of the same to the trial court in March of 2003. In April of 2003, appellant filed a motion for summary judgment and appellee filed its brief in opposition to her request for summary judgment. Appellant filed an additional memorandum in support of her motion and the trial court denied her motion for summary judgment on May 28, 2003.
 {¶ 6} In August of 2003, appellee filed its motion for summary judgment against appellant only; appellant then filed a memorandum in opposition to appellee's motion. On September 30, 2003, the trial court granted summary judgment to appellee as to both appellee's complaint and appellant's counterclaim in the case. Appellant filed a motion requesting a stay of that judgment. The trial court granted the stay and ordered the requirement that appellant file a supersedeas bond be waived in the case.
 {¶ 7} Appellant timely appealed the September 30, 2003 order and now sets forth three assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"The trial court committed reversible error granting preferred capital[,] Inc. motion for summary judgment, it was an abuse of discretion." [sic]
 SECOND ASSIGNMENT OF ERROR
"The trial court committed reversible error because the decision was against the manifest weight of the evidence."
 {¶ 8} In her first two assignments of error, appellant argues the trial court erred in granting appellee summary judgment. This Court disagrees.
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 10} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material showing that a genuine dispute over material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} The instant case involves a breach of contract claim concerning a statutory finance lease entered into by the parties. In O'Bryon v. Poff, 9th Dist. No. 02CA0061, 2003-Ohio-3405, at ¶ 27, this Court explained:
"It is the burden of the party seeking to enforce the contract to prove, by a preponderance of the evidence, all of the elements of a claim for breach of contract. Cooper Pachell v. Haslage
(2001), 142 Ohio App.3d 704, 707, 756 N.E.2d 1248. `Those elements include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.' Doner v. Snapp (1994), 98 Ohio App.3d 597, 600,649 N.E.2d 42."
 {¶ 12} The Ohio Supreme Court has held that the guarantor of a written contract is also bound by the words of that contract.Third Natl. Bank v. Laidlaw (1912), 86 Ohio St. 91, 99. However, a guarantor is liable for the debt of the principal party responsible for paying under the terms of the contract only when that party is unable to tender payment. Liquidating MidlandBank v. Stecker (1930), 40 Ohio App. 510, 517.
 {¶ 13} R.C. 1310.01(A)(7) defines "finance lease" as a lease to which all of the following pertain:
"(a) The lessor does not select, manufacture, or supply the goods;
"(b) The lessor acquires the goods or the right to possession and use of the goods in connection with the lease;
"(c) One of the following occurs:
"* * *
"(iv) If the lease is not a consumer lease, before the lessee signs the lease contract, the lessor informs the lessee in writing of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person; that the lessee is entitled under sections 1310.01 to 1310.78 of the Revised Code to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; and that the lessee may communicate with the person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies."
 {¶ 14} In its motion for summary judgment, appellee argued appellant breached their contract because (1) appellee performed by acquiring the ATM that the defendants had selected from CCC for the sole purpose of leasing it to the defendants, providing financing to them under the lease agreement, (2) the defendants failed to tender the requisite lease payments to appellee, and (3) appellant was individually responsible for those payments as the only solvent guarantor of the lease. Appellee asserted the contract is a statutory finance lease, which renders it independent of any other contracts appellant has with non-parties to this case and, therefore, unaffected by any breach of those contracts. Appellee further argued, as a statutory finance lease, the contract is also irrevocable as a matter of law because the ATM was accepted under the contract in that Mr. Huynh received the ATM in the grocery store and six of the 60 requisite lease payments were made on the ATM before the defendants and appellant stopped performing under the lease agreement.
 {¶ 15} In support of its argument that no genuine issue of material fact remains as to the elements necessary to prove appellant's breach of the contract, appellee presented the sworn affidavit of Rich Armeni, appellee's Manager of Asset Remarketing. Appellee further presented a copy of the "Vendor Finance Program and Remarketing Agreement" between it and CCC to show the following: CCC was the supplier of the ATM; CCC contracted separately with the defendants and appellant to provide service, maintenance and all of the warranties for the ATM; and CCC represented to appellee that the defendants and appellant knew both these facts and that CCC and appellee were in no way related in that their obligation to pay appellee under the lease was not contingent upon the performance of the ATM.
 {¶ 16} Appellee also provided (1) a copy of CCC's invoice to show the sale of the ATM chosen by the defendants to appellee and the shipment of the ATM to Mr. Huynh at the grocery store location, and (2) a copy of the Uniform Commercial Code filing to show appellee secured the ATM as the lessor of the property and the defendants were listed as the lessee of the property. It presented appellant's answers to specific discovery requests from appellee and a copy of the "Guaranteed Purchase Requirement" in which the defendants agreed to purchase the ATM from appellee at the expiration of the lease term. Lastly, appellee provided a copy of the statutory finance lease agreement between the defendants and appellant and appellee, which evidenced that the contract included a section defining it as a statutory finance lease, a section explaining the disclaimer of warranties, and a "Guarantee" section which, included within its explanation, stated "Guarantor acknowledges that this is an irrevocable personal and individual guarantee" and showed appellant's signature and personal information.
 {¶ 17} Appellee referred to all of the above evidence to show that no genuine issues of material fact remain as to its breach of contract claim against appellant. Appellee asserted it is entitled to judgment as a matter of law due to the following: (1) the defendants breached the contract by failing to tender payment to appellee, and (2) the defendants' failure to pay pursuant to their finance lease, along with Mr. Huynh's insolvency, renders appellant liable to appellee as the remaining solvent guarantor under the contract. This Court finds appellee satisfied itsDresher burden and, as a result, the burden shifts to the appellant to satisfy the same in order to overcome summary judgment against her. Civ.R. 56(E).
 {¶ 18} Appellant did not produce sufficient contrary evidence in response to appellee's motion for summary judgment. Appellant had no affidavits or materials of evidentiary value attached to her motion in opposition to appellee's summary judgment request. Although appellant attached four news articles concerning CCC, the articles do not provide any evidence to show that a genuine dispute over material facts does exist with regard to appellee's breach of contract claim against appellant. Consequently, appellant has failed to meet her Dresher burden.
 {¶ 19} After reviewing the evidence in the light most favorable to appellant, this Court finds that no genuine issues of material fact remain as to the essential elements of appellee's breach of contract claim against appellant. In light of the above facts and the applicable law, this Court finds that summary judgment was properly granted to appellee. Appellant's first two assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR
"The trial court in an abuse of discretion committed reversible error by denying appellant the right to a change of venue to the county where the business transaction occurred."
 {¶ 20} In her third assignment of error, appellant argues the trial court abused its discretion by denying her request for a change of venue to the county where the business transaction occurred. This Court disagrees.
 {¶ 21} In the instant case, the statutory finance lease the parties contracted for included the following forum selection clause:
"27. CHOICE OF LAW AND VENUE. This Lease shall not be effective until signed by Lessor at its principal office listed above. This Lease shall be considered to have been made in the state of Lessor's principal place of business listed above and shall be interpreted in accordance with the laws and regulations of the State of Ohio. The parties, and any guarantors, expressly agree that any action to implement and/or explore the terms of this Lease shall be brought in the Summit County Common Pleas Court in Akron, Ohio, or the county of Lessor's principal place of business." (Emphasis added.)
 {¶ 22} Appellant agreed to this clause when she signed as guarantor of the lease.
 {¶ 23} The Ohio Supreme Court has held that, "[a]bsent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust."Kennecorp Mortgage Brokers, Inc. v. Country Club ConvalescentHospital, Inc. et al. (1993), 66 Ohio St.3d 173, syllabus. The instant case involves a commercial contract between business entities, and appellant has not provided evidence of fraud or overreaching by appellee. Furthermore, after a review of the record, this Court cannot find that the enforcement of the forum selection clause would be unreasonable or unjust in light of the facts of this case. This Court finds the Summit County venue was proper for the resolution of the parties' case and the trial court did not abuse its discretion in denying appellant's request to change venue to Franklin County, where she resides and where the defendant business is located. Appellant's third assignment of error is overruled.
 III. {¶ 24} Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, J., Whitmore, J., Concur.