DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court summary judgment that dismissed all remaining parties in an action brought by Robin K. Davis, plaintiff below and appellant herein.
 {¶ 2} Appellant assigns the following errors for review:
i. First assignment of error
ii. "The trial court erred in granting summary judgment in favor of defendant mary bone-kunze, thereby dismissing her from the action, when she failed to move the trial court for summary judgment[.]"
iii. Second assignment of error
iv. The trial court erred and abused its discretion in changing venue from the franklin county common pleas court to the pike county common pleas court[.]"
v. Third assignment of error
vi. "The trial court erred in setting the period for discovery at only two months despite this being an action based on a professional tort[.]"
vii. Fourth assignment of error
viii. "The trial court erred in granting the non-attorney defendants, david seif, david seif, jr. kelly seif, cindy McGuire and Donald Davis', motions for summary judgment[.]"
ix. Fifth assignment of error
x. "The trial court erred in finding that the appellants' claims in this action could be considered to be frivolous[.]"
 {¶ 3} This appeal is another installment in the divorce saga of Appellant Robin K. Davis and her ex-husband, Donald Davis, the defendant below and appellee herein. Although the parties divorced in 1998, events which transpired in their marriage and subsequent divorce spawned three additional civil suits and three appeals spanning two different counties. A brief review of the facts are as follows.
 {¶ 4} The couple married on July 2, 1993. In 1996, Donald Davis approached Appellee David Seif for help in financing the purchase of approximately 66 acres of land. Seif put Davis in contact with his sons, appellees David Seif, Jr. and Kelly Seif, who agreed to front the purchase price if Davis and the appellant would then convey one-half of their interest to them and execute a note to pay one half of the purchase price. On March 1, 1996, a warranty deed was filed for record with the Pike County Recorder that transferred the 66 acres to the appellant and Donald Davis. That same day, the couple purportedly executed a deed conveying a one-half interest in the property to the Seif brothers. The Seif deed, for some reason, was not recorded for several years.
 {¶ 5} Appellant filed for divorce the following year inDavis v. Davis, Pike County Common Pleas No. 287 CIV D 97 (Davis I). On April 17, 1998, while the divorce was pending, the Seif deed was recorded. Three days later, the appellant and Davis appeared in court and agreed to a property settlement that called for their one-half interest in the property to be sold at auction. The trial court explicitly asked the appellant if she thought that this was a fair agreement and she responded in the affirmative.
 {¶ 6} Nevertheless, on November 17, 1998, the appellant filed a "proffer of evidence" and claimed that her signature on the deed to transfer the one-half interest to the Seif brothers was fraudulent and that she signed the deed under duress.[1]
Appellant asked that the trial court revisit the property division in light of such fraud. The trial court apparently rejected her "proffer" and, on December 7, 1998, issued a judgment that, inter alia, granted a divorce on grounds of incompatibility, designated Donald Davis as the primary residential parent of the parties' minor child and adopted the parties' property agreement.
 {¶ 7} Appellant appealed the trial court's judgment and asserted no fewer than twelve assignments of error that challenged, among other things, the court's adoption of the property settlement in light of her allegations of fraud and duress. We rejected that argument on grounds that the appellant (1) did not proffer any evidence of duress, and (2) knew of the alleged fraud several months before the court hearing and property settlement, but nevertheless agreed, in open court, to the division of property. We affirmed the divorce decree in toto. See Davis v. Davis (Sep. 5, 2000), Pike App. No. 99CA630 (Davis IA).
 {¶ 8} On March 20, 1999, the parties' one-half interest in the 66 acre parcel was sold at auction and acquired by Donald Davis for $5,000. Appellant objected to the sale and claimed that the sales price was grossly inadequate. Consequently, the trial court held a hearing over several days to determine if the sale should be confirmed. During that time, the appellant again raised the issue of whether her signature on the 1998 Seif deed was properly witnessed and notarized. The court nevertheless confirmed the sale. Appellant appealed that decision. Once again, we affirmed the trial court's judgment. See Davis v. Davis
(Jun. 7, 2002), Pike App. No. 01CA668 (Davis IB).
 {¶ 9} On March 18, 1999, the appellant filed a lawsuit against her ex-husband and alleged that he obtained her signature on the deed with threats of bodily harm, told her that the transfer of the property was necessary to settle marital debts that did not exist and that, in any event, she signed the document outside the presence of any witnesses or notary. She asked for damages, in the amount of $25,000, "liquidated damages" in an amount equal to three times the fair market value of the one-half interest plus attorney fees and costs. Davis v. Davis,
Pike County Common Pleas No. 105 CIV 99 (Davis II). Appellant dismissed the action on November 12, 1999.
 {¶ 10} On April 6, 2000, the appellant filed another lawsuit, this time pro se and against Appellee David Seif rather than her ex-husband, and set out essentially the same allegations. Again, the appellant asked for $25,000 in compensatory damages, liquidated damages and punitive damages. Davis v. Seif, Pike Common Pleas Court No. 126 CIV 00 (Davis III). She dismissed this lawsuit on April 10, 2000.
 {¶ 11} Appellant commenced the present action in Franklin County on October 6, 2000. Her complaint, spanning more than twenty pages and one hundred paragraphs, set out ten "claims" against eighteen defendants. These defendants can be grouped into the following categories: those parties who allegedly participated in the alleged original fraud (appellant's exhusband Donald Davis, David D. Seif, David D. Seif, Jr., Kelly Seif, Cindy McGuire and Brenda Adams),[2] the attorneys who represented appellant during her divorce and were allegedly negligent for their failure to request a restraining order before the property was transferred and then failed to seek to have that conveyance set aside (William Eachus, Mary Bone Kunze and Deborah Douglas Barrington), various "John Doe" and "Jane Doe" entities who may claim an interest in the premises and the Waverly uilding Loan Co.[3] Davis v. Eachus, Franklin County Common Pleas No. 00CVA 10-8982 (Davis IV).
 {¶ 12} Appellant's three page prayer for relief asks, in essence, for "reformation" of the deed, the transfer of the property to her, a "cleansing" of title, $25,000 in compensatory (and unspecified punitive) damages from her ex-husband and every defendant with the last name of "Sief," $25,000 in compensatory damages from Deborah Douglas Barrington, $25,000 in compensatory damages from Mary Bone Kunze and William Eachus, jointly and severally[4] together with an award of attorney fees.
 {¶ 13} In the months that followed, various parties filed motions to transfer the case from Franklin County to Pike County.
Although the complaint listed most of the parties as Pike County residents, (except for Mary Bone-Kunze from Jackson County and Deborah Douglas Barrington from Ross County), the appellant alleged that William Eachus was both registered to vote and had a vehicle registered in Franklin County. Thus, she opted to commence the action in Franklin county. The various motions to transfer the case to Pike County argued that Davis II was still technically pending and, thus, the Pike County Common Pleas Court had jurisdiction over these issues.[5] William Eachus also filed a motion to change venue accompanied by an affidavit that noted that although he owns property in Franklin County, his residence and law practice are both in Gallipolis, Ohio.
 {¶ 14} On January 8, 2001, the Franklin County Common Pleas Court granted the motions and ordered the case transferred to Pike County. Several days later, the court reconsidered its decision on grounds that it had not considered the appellant's memorandum contra before it granted the motions. On January 31, 2001, the court again granted the motions and ordered that the case be transferred to Pike County. Appellant filed an appeal with the Tenth District Court of Appeals but her case was dismissed for lack of jurisdiction. See Davis v. Eachus (Mar. 30, 2001), Franklin App. No. 01AP-160 (Davis IVA).
 {¶ 15} After the transfer to Pike County, most of the named defendants filed answers and denied liability. Appellees David Seif, Jr. and Kelly P. Seif also filed a counterclaim and alleged that appellant's claims clouded title to their property. They asked for judgment to declare them to be the fee simple owners of their interest and, in essence, to quiet title to their interest.
Subsequently, several parties filed summary judgment motions. On September 12, 2002, the appellant requested additional time to conduct discovery so that she could file her memorandum in opposition to the summary judgment motions. The trial court did not rule on her motion. Instead, on November 26, 2002, the court granted the motions and ordered the case dismissed against all defendants.
 {¶ 16} The trial court reasoned that because the appellant's fraud claims had been previously litigated and decided, those claims are now barred by the doctrine of res judicata. The court also noted that the appellant produced no evidentiary materials to sustain a claim of fraud or professional malpractice. Finally, the court opined that it is "difficult to comprehend" how the appellant could have been damaged through any fraud or malpractice because, insofar as the property at issue was concerned, she "provided no funds," but "ended up with an undivided ¼ interest in the [r]ealty." Indeed, the trial court concluded that some of the appellant's claims could "be considered by an objective observer to be frivolous."
Appellant appealed that decision and judgment. This court dismissed the appeal for lack of a final appealable order because a pending attorney fee request needed to be resolved. See Davisv. Eachus (Mar. 31, 2003), Pike App. no. 02CA705 (Davis IVB). The case returned to the trial court and the parties agreed to withdraw the attorney fee request. A stipulated entry to that effect was entered on March 1, 2004. This appeal followed.[6]
 1. I {¶ 17} We first address, out of order, the fifth assignment of error wherein the appellant objects to the court's characterization of her case as being "frivolous." In particular, she argues that the court was required to follow certain procedures before it could enter such a finding and the court did not follow those procedures. See R.C. 2323.51. Thus, appellant concludes, the court's observation was in error. We disagree.
 {¶ 18} R.C. 2323.51 concerns the award of attorney fees for frivolous conduct. In the instant case, the trial court did not award attorney fees. Thus, the court was not obligated to follow the statute's requirements. Moreover, we note that the trial court was apparently offering an observation and expressing its opinion as to the merits of the appellant's claims. Those observations are essentially dicta and, even if improper, constitute at most harmless error. See Civ.R. 61.
 {¶ 19} For these reasons, we hereby overrule the appellant's fifth assignment of error.
 1. II {¶ 20} Appellant asserts in her fourth assignment of error that the trial court erred in granting summary judgment in favor of several of the non-attorney defendants (David Seif, David Seif, Jr., Kelly Seif, Cindy McGuire and Donald Davis). Again, we disagree.
 {¶ 21} It is well-settled that appellate courts review summary judgments de novo. See Broadnax v. Greene CreditService (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167;Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41,654 N.E.2d 1327. In other words, appellate courts afford no deference to a trial court's summary judgment decision, see Hicks v.Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777;Dillon v. Med. Ctr. Hosp. (1993), 98 Ohio App.3d 510, 514-515,648 N.E.2d 1375; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412, 599 N.E.2d 786, and conduct an independent review to determine if summary judgment is appropriate. Woods v. Dutta
(1997), 119 Ohio App.3d 228, 233-234, 695 N.E.2d 18; McGee v.Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 241,659 N.E.2d 317.
 {¶ 22} Summary judgment under Civ.R. 56(C) is appropriate when a movant can demonstrate, after the court construes the evidence most strongly in favor of the non-moving party, that (1) no genuine issues of material fact exist, (2) the movant is entitled to judgment in its favor as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party. Zivich v. MentorSoccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46. The parties moving for summary judgment bear the initial burden of demonstrating that no genuine issue of material fact exist and that they are entitled to judgment in their favor as a matter of law. See Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is satisfied, the onus shifts to the non-moving party to provide evidentiary materials in rebuttal. See Trout v.Parker (1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015; CampcoDistributors, Inc. v. Fries (1987), 42 Ohio App.3d 200, 201,537 N.E.2d 661. With these principles in mind, we turn our attention to the case at bar.
 {¶ 23} The summary judgment motions are based, in part, on grounds of res judicata. The principle of res judicata is that a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions, and facts in issue as to the parties and their privies. It is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them. State ex rel. Scheider v. North Olmstead Bd.of Edn. (1988), 39 Ohio St.3d 281, 281-282, 530 N.E.2d 206;Johnson's Island, Inc. v. Bd. of Twp. Trustees (1982),69 Ohio St.2d 241, 243, 431 N.E.2d 672.
 {¶ 24} The Ohio Supreme Court has defined res judicata as follows:
 {¶ 25} "The doctrine of res judicata involves two basic concepts. Norwood v. McDonald (1943), 142 Ohio St. 299
[27 O.O. 240], 52 N.E.2d 67. First, it refers to the effect a judgment in a prior action has in a second action based upon the same cause of action. The Restatement of the Law, Judgments, Section 45, uses the terms "merger" and "bar." If the plaintiff in the prior action is successful, the entire cause of action is "merged" in the judgment. The merger means that a successful plaintiff cannot recover again on the same cause of action, although he may maintain an action to enforce the judgment. If the defendant is successful in the prior action, the plaintiff if "barred" from suing, in a subsequent action, on the same cause of action. The bar aspect of the doctrine of res judicata is sometimes called "estoppel by judgment." Restatement of the Law, Judgments, Section 45, comment (b).
 {¶ 26} The second aspect of the doctrine if res judicata is "collateral estoppel." While the merger and bar aspects of res judicata have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, comment (c), and Section 68(2); Cromwell v. Countyof Sac (1876), 94 U.S. 351 [24 L.Ed. 195]. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit."[7]
 {¶ 27} In the case sub judice, abundant evidence established that the same issues raised herein were also raised and examined in Davis I, Davis IA and in the sale confirmation proceedings that precipitated Davis IB. The same issues were also raised, though never adjudicated, in Davis II and Davis III. In examining these proceedings, the trial court concluded, in essence, that the alleged issues of fraud that surrounded the transfer of appellant's interest in the 66 acre parcel of land were long since determined and are barred from re-litigation by the doctrine of res judicata. Appellant argues this decision constitutes error for several reasons.
 {¶ 28} To begin, the appellant contends that the doctrine of res judicata can not be applied here because she was not afforded a full and fair opportunity to litigate her claim. We are not persuaded. The evidentiary materials firmly establish that the issue was raised in Davis I, both before and after the first appeal, and that it was also addressed by us in Davis IA.
Appellant had the opportunity and did, in fact, raise a claim that her property interest was fraudulently transferred. The trial court simply found no merit in that claim and we affirmed that finding.
 {¶ 29} Appellant also argues that she was not provided a full and fair opportunity to litigate her claim because (1) third parties (the Seif family in particular) were involved in the fraud, but were not a part of the divorce proceeding; and (2) a domestic relations case did not vest the trial court with jurisdiction to resolve all of the claims. This argument raises two separate issues and we shall address them individually.
 {¶ 30} First, we note that courts charged with resolving domestic relations disputes have the authority to determine all domestic relations matters, including a division of marital property. See, generally, Keen v. Keen, 157 Ohio App.3d 379,811 N.E.2d 565, 2004-Ohio-2961, at ¶ 10; R.C. 3105.011. Appellant raised the issue of fraud in context of the division of marital property and, indeed, used it as a claim to set aside a previous property settlement. The trial court had jurisdiction over the issue in order to determine if the appellant had been awarded an equitable property division. Therefore, the court could, and did, decide the issue on the merits thus barring it from a subsequent resurrection.
 {¶ 31} Appellant counters by citing Bauer v. Huntington Nat.Bank (2000), Franklin App. No. 99AP-347 for the proposition that domestic relations divisions of common pleas courts cannot determine tort actions allegedly committed by third parties who were not a party to the original divorce. Thus, appellant maintains, res judicata cannot be applied against her. We believe that her reliance on this case is misplaced for several reasons. First, Bauer does not directly address the issue of domestic relations jurisdiction. Instead, it discusses the issue of whether res judicata can apply to those who were not parties to the original action. Second, unlike Bauer in which it was established that vehicle titles had been forged, in the case sub judice it has already been determined in Davis I, and affirmed in Davis IA, that Donald Davis did not defraud the appellant. It takes no great leap in logic to conclude that if Donald Davis did not commit a fraud, the other non-attorney defendants/appellees could not have committed fraud.
 {¶ 32} That brings us to the second issue — whether res judicata can be applied against third persons who were not parties to Davis I. Under the facts of this case, we answer that question in the affirmative. We addressed the same issue in a case much like this one which continued to re-surface in a variety of different forms. See Blackburn v. Springer (Mar. 22, 1994), Scioto App. No. 93CA2161.[8] In affirming the application of res judicata to that case, we held:
 {¶ 33} "Appellant seems to base his argument upon the claim preclusion aspect of res judicata. We agree that this case involves a different cause of action than that determined in theTudor litigation. Therefore, this action is not barred by theTudor judgment. However, this case actually presents an issue preclusion question, i.e., whether appellant may be collaterally estopped from relitigating issues which were finally determined in the Tudor litigation. Appellant seems to make two arguments which relate to issue preclusion. First, he contends, because neither appellee nor Mr. Springer were parties to the Tudor litigation, nor are they in privity with Ms. Tudor, the requirement of mutuality of parties has not been met and therefore collateral estoppel is improper. * * * Generally, collateral estoppel applies only when the party seeking to use a judgment and the party against whom the judgment is being asserted were both parties to the original action or were in privity with a party involved in the original action. Appellee was not a party to the Tudor litigation and is not in privity with Ms. Tudor. Thus, under the "mutuality of parties" rule, she could not bar appellant from relitigating an issue which was decided in the Tudor litigation. However, the "mutuality of parties rule" may be relaxed when the party against whom the prior judgment is asserted clearly had his day in court and fully litigated the specific issue of which one party seeks to bar relitigation. * * * In the Tudor litigation, appellant fully litigated the issues of whether he had any legal or equitable interest in the Oakland residence. The parties tried these issues to the common pleas court. Appellant then appealed to this court which affirmed the trial court's determination that appellant did not have an equitable interest in the Oakland residence. * * *" (Citations omitted). Id.
 {¶ 34} We believe that the same principles apply here. Appellant had the opportunity to fully litigate the fraud claims against her ex-husband in Davis I (when she attempted to set aside the agreed property settlement and when she opposed confirmation of the auction of her interest) and it was determined that those claims had no merit. She appealed that finding in Davis IA and we found no error. While it is true that the appellant has not yet had an opportunity to litigate her fraud claims against all of the remaining non-attorney defendants, there can be no fraud committed by them unless it is also determined that her ex-husband, Donald Davis, perpetrated fraud as well. In other words, liability on their part must necessarily flow from Donald Davis's actions and a court has already determined that he did not perpetrate fraud.[9]
Therefore, no claim may lie against the other defendants. We thus conclude that the trial court correctly applied res judicata, or its associated doctrine of collateral estoppel, to enter summary judgment in their favor.[10]
 {¶ 35} Appellant also argues that the trial court erred in granting summary judgment because exhibits introduced from DavisI, Davis II and Davis III were not properly submitted for the court's consideration. Specifically, she argues that the exhibits should have been incorporated into an affidavit pursuant to Civ.R. 56(E), rather than including certified copies. We agree with appellant as an abstract proposition of law, but not with regard to the procedural facts at issue here.
 {¶ 36} Civ.R. 56(C) provides that only "pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcript of evidence in the pending case, and written stipulations of fact" may be filed as supporting evidentiary materials in a summary judgment motion. This provision is very specific in prescribing what evidentiary materials may be considered in deciding a summary judgment motion. Waldeck v. North College Hill (1985),24 Ohio App.3d 189,190,493 N.E.2d 1375. A trial court may not consider any document other than those specifically listed in Civ.R. 56(C). Wall v. Firelands Radiology, Inc. (1995),106 Ohio App.3d 313,334,666 N.E.2d 235;Spier v. American Univ. of the Caribbean (1981),3 Ohio App.3d 28,29,443 N.E.2d 1201.
 {¶ 37} Generally, a pleading filed in another action does not fall within the express limits of acceptable materials set forth in Civ.R. 56(C) and should not be considered. Climaco,Seminatore, Delligatti Hollenbaugh v. Carter (1995),100 Ohio App.3d 313, 318, 653 N.E.2d 1245, at fn. 4. The correct method to introduce items such as these is to incorporate them into a properly framed affidavit. See Civ.R. 56(E); Wall, supra at 334; Christie v. GMS Mgt. Co. (1997), 124 Ohio App.3d 84, 90,705 N.E.2d 691; Phillips v. Rayburn (1996),113 Ohio App.3d 374, 378, 680 N.E.2d 1279.
 {¶ 38} By the same token, if the record does not reveal any objection or motion to strike the improperly submitted materials, any error is deemed waived. Boydston v. Norfolk Southern Corp.
(1991), 73 Ohio App.3d 727, 731, 598 N.E.2d 171, at fn. 2;Gaumont v. Emery Air Freight Corp. (1989), 61 Ohio App.3d 277,287, 572 N.E.2d 747; Lytle v. Columbus (1990),70 Ohio App.3d 99, 104, 590 N.E.2d 421. Appellant has not cited to us any objection to these deficiencies and we have found none in our review. Also, it does not appear that she filed a motion to strike. We therefore conclude that the appellant waived any error with respect to the deficiencies in appellee's evidentiary materials in support of their respective motions for summary judgment.
 {¶ 39} Appellant also asserts that the trial court erred in granting summary judgment and dismissing her claims without providing her more time for discovery. We disagree.
 {¶ 40} Under Civ.R. 56(F), a party opposing summary judgment may request a continuance in order for the party to obtain affidavits or to conduct further discovery. However, a party must state a factual basis and provide reasons why it cannot present facts essential to its opposition to the summary judgment motions. Gates Mills Inv. Co. v. Pepper Pike (1978),59 Ohio App.2d 155, 392 N.E.2d 1316. Mere allegations requesting a continuance for the purpose of discovery do not generally provide sufficient reasons why a party cannot present affidavits in opposition to a summary judgment motion. Id.
 {¶ 41} In the case at bar, however, in light of our conclusion that the non-attorney defendants are entitled to dismissal on res judicata grounds, we fail to see how the appellant could have suffered any prejudice arising from the trial court's failure to provide the appellant with additional time to conduct discovery. Additional time would not have provided any benefit to the appellant.
 {¶ 42} For these reasons, we find no error in the trial court's decision to grant summary judgment in favor of the nonattorney defendants. Accordingly, we hereby overrule appellant's fourth assignment of error.
 1. III {¶ 43} We next proceed to the appellant's first assignment of error concerning the summary judgment in favor of Appellee Mary Bone Kunze. Appellant argues that Kunze did not file a motion for summary judgment and the trial court should not have entered judgment in her favor. We agree, albeit to a more limited extent than the appellant argues in her brief.
 {¶ 44} This court has previously held that trial courts may not sua sponte grant summary judgment when no party has moved for such relief. See e.g. Besser v. Griffey (1993),88 Ohio App.3d 379, 382-83, 623 N.E.2d 1326; Minix v. Collier (March 31, 1998), Scioto App. No. 97CA2523. The gist of our reasoning in those cases is that when no motion was filed at all, the non-moving party is not under notice that the time had come to marshal evidence in support of the claims or the asserted defenses.
When, however, motions for summary judgment have been filed, the non-moving party has notice that the time has come to produce evidentiary materials to support his claims or defenses. Under those circumstances, we have held that, although noting that courts should refrain from granting sua sponte summary judgment to a nonmoving party as a general rule, that courts may indeed do so under proper circumstances, i.e., when all relevant evidence is before the court, no genuine issue as to any material fact exists, and the nonmoving party is entitled to judgment as a matter of law. See Wilson v. Tucker (Jan. 14, 1997), Ross App. No. 99CA2209; also see Fink, Greenbau Wilson, Guide to the Ohio Rules of Civil Procedure (2001 Ed.) 56-10, § 56-5.
 {¶ 45} Before we apply these principles to the case sub judice, we first pause to address the nature of the appellant's claims against Kunze. The twenty page, one hundred paragraph complaint appears to include two separate claims. The first claim is for legal malpractice and, as to that particular claim, we believe the court correctly granted summary judgment in Kunze's favor.[11]
 {¶ 46} The malpractice claim stemmed from Kunze's alleged failure to challenge the conveyance of the appellant's interest in the 66 acre tract as having been obtained by fraud. Without a showing of fraud, there can be no negligence on Kunze's part for not challenging that deed. Appellant was well aware that the other defendants filed summary judgment motions with respect to her fraud allegations. Thus, the appellant was on notice that she had to marshal evidence in her favor on that point. She failed to do so. We therefore conclude, under the circumstances present in the instant case, that sua sponte summary judgment is appropriate as to the malpractice claim against Kunze.[12]
 {¶ 47} The second claim we can discern against Kunze is for breach of her employment contract with the appellant. On this claim, we believe the trial court erred in granting summary judgment sua sponte.[13] While the appellant was on notice as to the necessity of producing evidence regarding the fraud claim, she did not necessarily have notice as to the breach of contract claim. This is a separate issue from fraud and requires different evidence on her part. Accordingly, we conclude that the trial court erred in granting sua sponte summary judgment as to this particular issue. Therefore, we hereby (1) sustain in part and overrule in part the appellant's first assignment of error, and (2) remand the breach of employment contract claim for further proceedings consistent with this opinion.
 1. IV {¶ 48} We now turn to the appellant's second assignment of error. Appellant argues that the Franklin County Common Pleas Court erred in transferring this case to Pike County. We disagree.
 {¶ 49} A civil action can be commenced in any county where venue properly lies. The factors that determine proper venue are set out in Civ.R. 3(B)(1)-(12). When, according to the Civ.R. 3(B) factors, venue may properly lie in two or more counties, discretion is conferred on a court to determine which county should have priority for transfer of venue to that county. Allinv. Hartzell Propeller, Inc., Miami 02CA57, 2003-Ohio-2827, at ¶ 53; also see Railroad Ventures, Inc. v. Drake (2000),138 Ohio App.3d 315, 325, 741 N.E.2d 206.
 {¶ 50} Trial court decisions regarding change of venue will not be disturbed on appeal absent an abuse of discretion. SeePreferred Capital, Inc. v. Sturgil, Summit App. No. 21787, 2004-Ohio-4453, at ¶ 23; Sheet Metal Workers Local 98, PensionFund v. Whitehurst, Knox App. No. 03CA29, 2004-Ohio-191, at ¶ 23. Appellant has not persuaded us that any abuse of discretion occurred in the court's decision to transfer this case from Franklin County to Pike County. None of the parties in this case resided in Franklin County. All of appellant's claims — the alleged fraud, the alleged malpractice, the alleged breach of an employment contract — all allegedly occurred in Pike County. Donald Davis, the Seif family, Cindy McGuire, Brenda Adams, the Waverly Building Loan and several of the Jane Doe defendants lived in Pike County. Given these factors, we find nothing improper in transferring venue from Franklin County to Pike County.
 {¶ 51} Thus, we hereby overrule the appellant's second assignment of error.
 1. V {¶ 52} We now turn to the appellant's third assignment of error in which she argues that the trial court erred in limiting her time to prosecute her claims. Specifically, she points to a January 9, 2002 entry following a pre-trial conference wherein the court set a cut off date for discovery with regard to nonexpert witnesses of March 15th and a cut off date for discovery with regard to expert witnesses of July 19th. Also, the trial court scheduled the matter for trial over two days in September. Appellant argues that the court's scheduling order provided too little time for her to conduct discovery and to prosecute such a complicated case. We are not persuaded.[14]
 {¶ 53} Trial courts are granted enormous discretion in managing their own dockets. Guy Trucking, Inc. v. Domer, Wood App. No. WD-03-077, 2004-Ohio-4269, at ¶ 27. They also have broad discretion in managing discovery. Zestos v. Powertrain Div.,
Defiance App. No. 4-01-29, 2002-Ohio-5096, at ¶ 18; Cunninghamv. Cunningham, Lorain App. No. 01CA7938, 2002-Ohio-2647, at ¶ 20;Atkins v. Chudowsky (Oct. 31, 2001), Lorain App. No. 01CA7834. An appellate court will not reverse a trial court's decision on these matters absent a showing of an abuse of that discretion. We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, [tc \l1 "unreasonable,] arbitrary or unconscionable. Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342,695 N.E.2d 1140. In applying this standard, appellate courts must not substitute their judgment for that of the trial court. State exrel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,732, 654 N.E.2d 1254; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Indeed, in order to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 54} After our review of the case at bar, we find no abuse of discretion. We recognize that we might have been inclined to believe that a two month discovery date for non-expert witnesses is too optimistic in a professional tort case that involves many parties and many claims. This case is not a typical case, however. The fraud issues that are involved here have manifested themselves, not just in this case, but also in Davis I, DavisII and Davis III. In short, the appellant has prosecuted the same fraud claims for more than five years. She has had ample time to conduct discovery since 1998. While this case admittedly marks the first time that she has raised malpractice claims, we also note that this case was pending well over one year before the court issued its discovery order. Appellant had many months to conduct discovery while this matter was pending in Franklin County and after it had been transferred to Pike County. She did not take advantage of those opportunities.
 {¶ 55} Appellant counters that Ohio Supreme Court Superintendence Rule 39(A) requires that this case be given a twenty-four month time span and that the trial court erred by not doing so. We disagree.
 {¶ 56} First, we find nothing in that rule that establishes an absolute minimum twenty-four month period that must be allowed for discovery in a tort case. Second, the official commentary to the rule states that "[t]he time limits imposed by this rule are for administrative purposes only." (Emphasis added.) In other words, the Supreme Court promulgated this rule primarily for the purposes of collecting information, not to establish a minimum time limit during which a tort case must be allowed to remain pending.
 {¶ 57} Finally, even if an error occurred in affording appellant a truncated discovery deadline, we believe that error is harmless. See Civ.R. 61. As we noted previously, the appellant's fraud claims are barred by res judicata. Her professional malpractice claims are derivative of that fraud and, if the appellant cannot establish fraud, she cannot establish malpractice. Thus, it does not matter whether the trial court provided two months or two years to conduct discovery. Regardless, the appellant could not overcome the problem that her primary claims are barred by res judicata.
 {¶ 58} For these reasons, we hereby overrule the appellant's third assignment of error.
 {¶ 59} In summary, having partially sustained the appellant's first assignment of error, the judgment of the trial court is affirmed in part and reversed in part. We remand the case sub judice for the sole purpose of conducting further proceedings on the issue of the appellant's claim for an accounting/breach of employment contract against Appellee Kunze. In all other respects, we hereby affirm the trial court's judgment.
Judgment affirmed in part, reversed in part and case remanded for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is hereby ordered that the judgment be affirmed in part, reversed in part and the case be remanded for further proceedings consistent with this opinion. Appellees shall recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. *Milligan, J.: Concur in Judgment Opinion.
[1] Specifically, the appellant claimed that she was forced to sign a blank deed (that the witnesses and the notary did not sign the deed until after the fact).
[2] Cindy McGuire and Brenda Adams were apparently employed by David Seif and witnessed the deed.
[3] The Waverly Building Loan Co. is apparently David D. Seif's employer. Appellant charged that it had knowledge of Seif's actions in fraudulently handling the deed.
[4] Mary Bone Kunze and William Eachus represented appellant simultaneously in the divorce.
[5] These motions were apparently premised on the existence of a pending counterclaim that remained after appellant dismissed her complaint in Davis II.
[6] We note that although there appears to have been no formal resolution of the counterclaim to quiet title filed by the Seif brothers against the appellant, this court has jurisdiction to review this case because (1) the March 1, 2004 entry contains the "no just reason for delay" language of Civ.R. 54(B) and (2) the counterclaim was based on the claims that the appellant asserted in her complaint against the Seif brothers. Those claims have now been dismissed and renders the counterclaim moot. See GeneralAcc. Ins. Co. v. Insurance Co. of North America (1989),44 Ohio St.3d 17, 21, 540 N.E.2d 266; Wise v. Gursky (1981),66 Ohio St.2d 241, 243, 421 N.E.2d 150.
[7] Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 112,254 N.E.2d 10 (overruled on other grounds Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, at the syllabus).
[8] The facts in Blackburn were that, although married to another woman, Blackburn was romantically involved with Tudor, the Springers' daughter/step-daughter. Blackburn purchased real property and had the grantors execute a deed to convey the title to Tudor as grantee. At his request, the grantors executed a second deed to convey the property to Blackburn. Neither deed was recorded at the time of purchase. Tudor moved into the house and lived there as her permanent residence. Later, Blackburn gave to Springer the deed that named Tudor as the grantee. Blackburn and Springer agreed that Springer would keep the deed in his safe and would not give it to Tudor unless Blackburn died or did not get divorced. The other deed was lost. For sometime, Blackburn lived with Tudor in the home. Later, Blackburn left the home and tried to reconcile with his wife, with whom divorce proceedings were pending. Tudor continued to live in the house. After Tudor found the deed that named her as the grantee, she recorded it. Blackburn sued Tudor and sought an order to declare the delivery of the deed to Tudor invalid and to set aside and cancel the conveyance. The trial court entered judgment for Tudor and we affirmed in part and reversed in part, and remanded to allow the trial court to enter judgment without considering certain evidence. Blackburn v. Tudor (Sept. 24, 1992), Scioto App. No. 2021. On remand, the trial court entered judgment in favor of Tudor and found that Blackburn was not entitled to legal relief. Several months thereafter, Blackburn filed a complaint against the Springers and alleged that as a result of their conduct, which amounted to fraud/conversion, Blackburn lost possession of the property. Both parties requested summary judgment. The trial court ultimately granted summary judgment in favor of the Springers. We affirmed on the basis that although the Springers were not parties to the original suit against Tudor, the action was nevertheless precluded by the doctrine of res judicata.
[9] It would be bizarre indeed if one court found that Donald Davis did not commit fraud in obtaining appellant's signature on the deed but another court found that the Seif family and McGuire acted fraudulently in accepting and recording the deed.
[10] In addition to res judicata, the court also found for the defendants on grounds of Civ.R. 41(A)(1)(b) (the so-called "two voluntary dismissal rule") because the appellant filed suit on the same type of claim in Davis II and Davis III but dismissed both of them voluntarily. Appellant claims that the court erred in relying on that rule because different defendants appeared in each case and the rule should not apply under these circumstances. We need not address that issue, however. Our conclusion that the defendants were properly dismissed on grounds of res judicata renders this issue moot.
[11] Count ten of the complaint alleges that Kunze was "negligent and/or guilty of professional malpractice" in her representation. The gist of this claim appears to be set out in paragraph sixty-four wherein she alleged that Kunze failed to take any action to "overturn, set aside or otherwise challenge" the disputed deed.
[12] We parenthetically note that if no fraud was found on the part of the non-attorney defendants, it follows that Kunze could not have committed malpratice by failing to challenge the deed on such grounds.It defies common sense to rule, on the one hand, that the fraud claims are barred by res judicata but, on the other hand, to allow a malpractice claim to continue on the basis of the same fraud allegations against a different party.
[13] County eight of the complaint prays for an accounting by Kunze for all charges she made against the appellant and all monies she collected from her. The gist of this claim appears to be set out in paragraphs sixty-two and sixty-three of the complaint in which the appellant alleges that Kunze failed to give her itemized statements for accounts, failed to account for depletion of a retainer given to kunze and that she and William Eachus double-billed appellant for the same services.
[14] Although there does not appear to be any objection to this entry, or immediate request for more time, appellant later requested more time to conduct discovery in order to respond to the various motions for summary judgment against her. For that reason, we find no waiver of this issue.