DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted appellee, Ameritech, summary judgment against appellant, Frame Chiropractic, Inc. ("Frame"), dismissing claims for breach of contract and negligence. In addition, the trial court granted summary judgment in favor of appellee on appellee's counterclaim, awarding judgment in the amount of $17,270.50, along with interest and costs. For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 2} On appeal, appellant, Frame, sets forth the following three assignments of error:
 {¶ 3} "No. 1: Whether the trial court erred when it granted summary judgment for defendant with respect to plaintiff's breach of contract claim?
 {¶ 4} "No. 2: Whether the trial court erred when it granted summary judgment for defendant with respect to plaintiff's negligence claim?
 {¶ 5} "No. 3: Whether the trial court erred when it granted summary judgment for defendant with respect to defendant's breach of contract counterclaim?"
 {¶ 6} The following undisputed facts are relevant to the issues raised on appeal. On April 30, 2001, Jerome Dombeck, D.C., purchased Frame. Prior to the sale, Frame and another area chiropractic business, Perrysburg Chiropractic, engaged in a collaborative business relationship. The two businesses jointly advertised as "Team Chiropractic." The trade name "Team Chiropractic" was registered with the state of Ohio in 1990, by Frame and Wayne Koskinen, D.C., owner of Perrysburg Chiropractic.
 {¶ 7} The record shows that there was a contract for yellow pages advertisements between Frame and Ameritech in the amount of $17,270.50. There was no contract between Frame and Ameritech for Frame's white pages listing. Ameritech was not the local exchange carrier for Frame. Frame contracted with Global Crossing prior to April 30, 2001, and then switched to TMC Telecom. Perrysburg Chiropractic contracted with Qwest Communications, Inc. ("Qwest") for local telephone service.
 {¶ 8} Ameritech must publish all white pages listings, regardless of the local exchange carrier selected by the customer. This is mandated by state and federal regulations. Because publication is made pursuant to regulatory mandate, Ameritech receives no compensation from local exchange carriers for publishing white pages listings. (O.A.C. § 4901:1-5-06(B)(1)).
 {¶ 9} Ameritech must, by regulation, publish white pages listings and all local service providers are required to enter into "interconnection agreements" with Ameritech. 42 U.S.C. § 252. This enables publication of the white pages directory containing customer listings of all local exchange carriers. Ameritech receives no direct financial benefit for the publication of white pages listings. In order to modify a white pages listing, there must be a service order request provided directly by the local exchange carrier to Ameritech.
 {¶ 10} Prior to May 25, 2001, Ameritech's interconnection agreement relevant to this case was with local exchange carrier, Northpoint. On May 25, 2001, Qwest "adopted" the interconnection agreement, continuing it in full force and effect during the years in controversy. The interconnection agreement required Qwest to directly provide their customer listings and listing updates to Ameritech for annual white pages publication.
 {¶ 11} The listing which Frame wanted updated was the Perrysburg Chiropractic listing. This required Qwest to directly provide Ameritech a service order request for the white pages listing update. The record reflects that Qwest did not actually provide the listing update until September 2003. This was timely for the 2003 publication of the "Team Chiropractic" white pages listing. However, because this service order request was not provided by Qwest to Ameritech prior to the white pages listing cutoff dates for the 2001 and 2002 editions, the "Team Chiropractic" listing was published in its original form in those editions. The 2001 and 2002 publication of the "Team Chiropractic" white pages listing in its original form was the basis of Frame's action against Ameritech.
 {¶ 12} Appellee filed for summary judgment on the claims and counterclaim on February 27, 2004. On March 26, 2004, appellant filed a memorandum in opposition to summary judgment. On April 23, 2004, appellee filed a reply brief. The trial court conducted a hearing on the summary judgment motions on May 6, 2004. On June 10, 2004, the trial court granted summary judgment to appellee. Appellant filed a timely notice of appeal on July 9, 2004.
 {¶ 13} We note at the outset an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 14} In his first assignment of error, appellant asserts that the trial court erred when it granted summary judgment to appellee on the breach of contract claim. In support, appellant argues appellee had the ability and authority to change the white pages listing prior to 2003.
 {¶ 15} Section XV.2 of the interconnection agreement entitled "listing and listing updates" expressly states: "Northpoint shall provide its Northpoint directory customer listings to Ameritech or its publisher in a form and format acceptable to publisher." This imposes the burden to furnish listing updates exclusively upon Qwest, who adopted this agreement from Northpoint on May 25, 2001. Nothing in the record vests Ameritech with the authority or duty to update a white pages listing of a Qwest customer when Qwest has not complied with Section XV.2. However, the sole defendant in Frame's suit is Ameritech.[1] Qwest was never made a party to this case.
 {¶ 16} It is well settled that "a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach."Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95. This evidentiary burden is imposed upon the one asserting breach of contract.
 {¶ 17} This court has reviewed and considered the record of proceedings before the trial court, and we find the lack of privity of contract between Frame and Ameritech fatal to the breach of contract claim. Appellant's first assignment of error is not well taken.
 {¶ 18} In appellant's second assignment of error, appellant asserts that the trial court erred when it granted summary judgment to appellee on the negligence claim, which also arises from the white pages dispute. In support, appellant argues appellee was not prohibited from, and had proper authorization to implement the update prior to 2003. Appellant states the trial court's conclusion that appellee lacked the duty and proper authorization to implement the update prior to 2003, on its own initiative constituted a finding of "illegality".
 {¶ 19} In this case, appellant's negligence claim is based upon the breach of contract claim. As applied to breach of contract actions, absent privity of contract, there is no duty owed by Ameritech to Frame. As reasoned in Laurent v. Flood Data Services (2001),146 Ohio App. 3d 392, "a plaintiff who merely suffers pecuniary damages does not have a legally cognizable or compensable injury under the negligence theory."
 {¶ 20} As this court held in Columbia Gas of Ohio, Inc. v. CrestlinePaving Excavating Co., Inc. (Feb. 21, 2003), 6th Dist. No. L-02-1093:
 {¶ 21} "Absent some agreement between the parties, no duty exists with respect to purely economic harm. Chemtrol Adhesives, supra. The decision to draw the line here reflects a social judgment as to where the loss should fall. See Wallace v. Ohio Dept. of Commerce, 96 Ohio St.3d 266, 274,2002-Ohio-4210, ¶ 24, 773 N.E.2d 1018. `[A]bsen[t] privity of contract no cause of action exists in tort to recover economic damages * * *.'" Id at paragraph 15.
 {¶ 22} Upon consideration of the foregoing, we find the lack of privity of contract is fatal to appellant's negligence claim. Appellant's second assignment of error is not well-taken.
 {¶ 23} Appellant asserts in his third assignment of error the court erred in granting summary judgment on the yellow pages breach of contract counterclaim. In order to prevail on its counterclaim, appellee must establish a contract existed between the parties for the yellow pages ads, appellee performed, appellant breached, and appellee incurred damages. Preferred Capital, Inc. v. Sturgil, 9 Dist No. 21787, 2004 Ohio 4453 at ¶ 11.
 {¶ 24} The record in this case shows Frame contracted with Ameritech for the yellow pages ads, the ads were properly published, Frame breached the contract when it refused to pay, and Ameritech was damaged in the amount of $17,270.50. Accordingly, appellant has no lawful basis to withhold payment, payment with interest and costs must be tendered. Appellant's third assignment of error is not well-taken.
 {¶ 25} On consideration whereof, this court finds no other genuine issue of fact remains and, after considering the evidence presented in the light most favorable to appellant, appellee is entitled to summary judgment as a matter of law.
 {¶ 26} The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of these proceedings are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J. and Parish, J. concur.
[1] Neither the local exchange carrier (Qwest), Koskinen or Perrysburg Chiropractic were party to the case.