CRIST, Appellant,

v.

BOARD OF TRUSTEES, BATTLE RUN FIRE DISTRICT, Appellee.

[Cite as *Crist v. Battle Run Fire Dist. Bd. of Trustees* (1996), 115 Ohio App.3d 191.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–96–36.

Decided Nov. 12, 1996.

192

*Coulter, Ballinger & Yager* and *Brent W. Yager*, for appellant.

*Daniel E. Shifflet & Co., L.P.A., Daniel E. Shifflet* and *Kevin P. Collins*, for appellee.

HADLEY, Presiding Judge.

Plaintiff-appellant, William Crist, appeals from the judgment entry of the Marion County Common Pleas Court finding that the defendant-appellee, Battle Run Fire District Board of Trustees properly removed appellant from his position as volunteer fire chief. The case was before the Marion County Common Pleas Court on administrative appeal pursuant to R.C. Chapter 2506.

In December 1993, appellant was removed as fire chief for the Battle Run Fire Department. At the time of his initial termination appellant was on medical leave and was not serving in his capacity as fire chief. Appellant successfully appealed his termination to this court, and was reinstated to the fire chief position in July 1995. Since appellant was on medical leave at the time of his termination, he was reinstated to the position of fire chief on medical leave after appealing his initial termination.

To return to active status as fire chief, appellee required appellant to undergo a physical examination and be cleared to engage in the duties necessary for the position of fire chief. The Battle Run Fire Department requires that the fire chief be able to successfully perform administrative, as well as actual fire fighting duties. Appellant submitted two "releases" from the office of his orthopedic physician purportedly giving appellant the requisite clearance to resume his position as fire chief. Appellee did not accept the "releases" from appellant's physician and required appellant to undergo a physical exam with industrial physician Dorsey Gilliam, M.D.

Through July and August 1995, several appointments were made by appellee for appellant to see Dr. Gilliam for his physical exam. However, appellant never received a physical exam from Dr. Gilliam. Ultimately, on August 18, 1995, appellee informed appellant that his failure to meet with Dr. Gilliam on August 25, 1995, at a scheduled appointment would lead to appellant's termination from his position as fire chief at the next scheduled board of trustees' meeting. Appellant received the letter informing him of his pending termination on August 21, 1995. Appellant did not attend his August 25, 1995 appointment.

On August 28, 1995, appellant's attorney contacted appellee's attorney to discuss establishing an alternate plan for obtaining a physical exam for appellant. The parties agreed that if a mutually agreed-upon physician could be selected, appellant would obtain his physical exam from that individual. On August 28, 1995, appellant submitted the names of three local physicians from which appellee was to select. Of the three physicians, appellee agreed that one physician was capable of undertaking an impartial physical exam of the appellant. However, appellee learned from the physician that he was unwilling to participate and recommended that appellee contact Dr. Gilliam for the performance of the physical exam on appellant.

On August 30, 1995, appellee sent a letter to appellant's attorney stating that the list of three physicians was inadequate and stated that appellant had ten days to set an appointment and obtain a physical exam from Dr. Gilliam or face termination at the next regularly scheduled board meeting. Appellant's attorney was on vacation and, as a result, appellant did not learn of the contents of the letter until the day of the trustees' board meeting, September 12, 1995.

Equipped with a tape recorder to record the events of the meeting, appellant attended the board of trustees' meeting on September 12, 1995. The trustees allowed appellant to address the board. After speaking to the board, appellant was again terminated from his position as fire chief.

Appellant appealed his termination to the Marion County Common Pleas Court alleging that his removal from the fire chief position (1) was in violation of appellant's due process and statutory rights, and (2) was undertaken without sufficient cause to remove him. On May 10, 1996, the Marion County Common Pleas Court held in favor of appellee's termination of appellant.

From the foregoing, this appeal follows with appellant asserting two assignments of error.

Assignment of Error No. 1

"The judgment of the trial court is against the manifest weight of the evidence."

Appellant disputes a number of the statements and findings of the trial court in its judgment entry as being against the manifest weight of the evidence. Before we address appellant's argument in more detail, we must first reiterate the applicable standard of review.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, paragraph one of the syllabus. It is "important that in [considering whether the trial court's judgment is against the manifest weight of the evidence] a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276.

Specifically, appellant contends that the following excerpt from the trial court's judgment are against the manifest weight of the evidence.

"Appellant was continued on medical leave when reinstated since appellee did not have evidence that appellant was physically fit to perform the duties of a firefighter."

Appellant argues that he submitted three "releases" from his orthopedic physician clearing him to perform the necessary fire fighting duties, as well as giving several oral notifications to the trustees of his capability to adequately perform the duties.

Competent, credible evidence was presented that the first release, purportedly given to a prior board of trustees, released appellant to perform the administra-

tive duties of fire chief. It is undisputed that the fire chief position requires the ability to undertake administrative duties, as well as actual physical fire fighting duties. The evidence presented demonstrated that the "release," written by appellant's orthopedic physician, did not clear the appellant for actual fire fighting. Additionally, it did not satisfy appellee's request that appellant obtain a physical before resuming to active status as fire chief.

The second release, written by a registered nurse at appellant's orthopedic physician's office, purportedly clears appellant for administrative and fire fighting duties. This letter is not a release at all. A registered nurse, although well educated and highly trained, is not qualified to render an adequate medical opinion.

The third release, dated February 1996, and which permitted appellant to perform administrative and fire fighting duties, is irrelevant. The release was not obtained by appellant until several months after his termination on September 12, 1995. The trustees did not have the third release in their possession on September 12, 1995, as it was not in existence.

The evidence demonstrated that appellant never obtained a physical from an approved physician. As a result, the trial court's finding that appellant did not present evidence that he was physically fit to perform the duties of a fire fighter is supported by competent, credible evidence.

"Appellant was ultimately informed by appellee that if he failed to attend his scheduled appointment with Dr. Gilliam on August 25, 1995, that he would be terminated at the September meeting of the Trustees. * * * Appellee's counsel then advised appellant's counsel that appellant must be examined by Dr. Gilliam prior to the September meeting of the Trustees or he would be terminated."

█ Appellant argues that the trustees orally agreed on August 28, 1995, not to terminate appellant for his failure to attend the August 25, 1995 appointment. Appellant contends that the terms of August 28, 1995 agreement were to select a mutually agreed upon physician to perform the physical. Thus, appellant states that he was unaware he was subject to termination at the September board of trustees' meeting if he failed to obtain a physical exam from Dr. Gilliam.

The evidence presented to the trial court demonstrated that appellant was notified by certified mail that he must attend a physical exam with Dr. Gilliam on August 25, 1995, or be terminated at the next board of trustees' meeting. Competent, credible evidence was also presented that the parties may have orally agreed to attempt to find a mutually agreed-upon physician to perform the physical exam after appellant failed to attend the physical exam on August 25, 1995. A letter from appellant's counsel to appellee's counsel stated that appellant had selected three physicians for the trustees to choose from to perform the

physical exam. Appellee then contacted one of the three physicians regarding the performance of a physical exam on appellant. That physician refused to perform the physical exam and recommended the services of Dr. Gilliam. The other two physicians selected by appellant were unacceptable to appellee.

Evidence presented also demonstrated that on August 30, 1995, appellee sent appellant's counsel a letter stating that none of the three physicians were acceptable selections, for the reasons stated above, and required that appellant obtain a physical exam from Dr. Gilliam within the next ten days or be terminated. The evidence proved that appellant did not learn of the contents of this letter until September 12, 1995, the day of the board of trustees' meeting and after the ten-day period to obtain the physical exam had expired. The reason for the delay in notifying appellant was that the letter was sent to appellant's counsel, who was on vacation at the time. Upon advice of his counsel, appellant attended the trustees' meeting and tape recorded that portion of the meeting pertaining to his termination as fire chief. The trustees permitted appellant to speak and present his version of the events. Appellant did not object to the hearing or ask for a continuance.

There was competent, credible evidence before the trial court for it to conclude that appellant had notice of the trustees' meeting and his pending termination. As the trial court stated, "[a]ppellee's counsel * * * advised appellant's counsel that appellant must be examined by Dr. Gilliam prior to the September meeting of the trustees or * * * be terminated."

Next, appellant disputes the trial court's finding that "appellant * * * was given notice of a scheduled termination hearing which was held on September 12, 1995, and which was attended by appellant. Appellee therefore met the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution." We will address the issue of whether the appellee violated appellant's due process rights when addressing appellant's second assignment of error.

"It is undisputed that appellee requires all of its firefighters to submit to a physical examination by appellee's industrial physician, who for a long period of time has been Dr. Gilliam. * * * The appellant's refusal to submit to an examination amounts to disobedience of a direct order from his employer and is therefore cause for removal."

It is undisputed that fire fighters must be physically capable of performing the duties of the position, and a person who is unable to perform these duties would place himself and others at risk of incurring injury or death. The evidence presented showed that appellant did not dispute the policy requiring him to undergo and pass a physical exam before returning to his position as fire chief.

His dispute was with the particular physician scheduled to perform the exam. There was competent, credible evidence that Dr. Gilliam was the industrial physician.

There was no evidence presented demonstrating that appellant verbally refused to submit to a physical exam, in general. Evidence presented demonstrated that appellee made numerous appointments for appellant with Dr. Gilliam. The appointment dates and times were usually either communicated to appellant's wife, his attorney or appellant. Appellant argued that he was unaware of a few of the scheduled appointments or had scheduling conflicts; therefore, he could not attend any of the exams. The evidence, however, demonstrated that appellant refused to see Dr. Gilliam because appellant lacked confidence in the physician's opinion and abilities. Appellant admitted that he wanted to obtain his physical exam from another physician. Yet he did not submit a list of alternative physicians until almost two months after the initial order to obtain a physical exam had been made by appellee. Competent, credible evidence was presented demonstrating that appellant's refusal to submit to a physical exam amounted to disobedience of a direct order, constituting grounds for his removal.

The manifest weight of the evidence supports the trial court's judgment that the appellee had cause to remove appellant from his position as fire chief of the Battle Run Fire Department. Therefore, appellant's first assignment of error is not well taken.

Assignment of Error No. 2

"The trial court abused its discretion in finding the appellee provided appellant with due process of law and by holding a trial *de novo* at appellee's request."

"The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142. Unless an abuse of discretion is found, the trial court's decision will not be disturbed on appeal. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031.

■ Procedural due process mandates that appellant be provided notice and a meaningful opportunity to be heard before a final administrative adjudication. *Ohio Assn. of Pub. School Emp., AFSCME, AFL–CIO v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 176, 624 N.E.2d 1043, 1044–1045; *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 542–544, 105 S.Ct. 1487, 1493–1495, 84 L.Ed.2d 494, 503–505. "Fundamental due process requires 'notice' sufficient to apprise the defendant of the action's pendency so that objections by the defendant may be presented." *Sampson v. Hooper Holmes, Inc.* (1993), 91 Ohio App.3d 538, 540, 632 N.E.2d 1338, 1340; *In re Foreclosure of Liens for*

*Delinquent Taxes* (1980), 62 Ohio St.2d 333, 16 O.O.3d 393, 405 N.E.2d 1030, paragraph one of the syllabus; *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313–314, 70 S.Ct. 652, 656–657, 94 L.Ed. 865, 872–873. "So long as the means employed are reasonably calculated to apprise appellant of the potential loss of his property interest, appellant has been afforded all the process that is due." *Seltzer v. Cuyahoga Cty. Dept. of Human Serv.* (1987), 38 Ohio App.3d 121, 124, 528 N.E.2d 573, 577. "Notice by mail is widely recognized as an efficient and inexpensive means of communication to inform a party of a proceeding which may adversely affect his liberty or property interests." *Id.* at 123, 528 N.E.2d at 576–577; *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180, 187–189.

▮ In the case *sub judice* appellant testified that he knew that the trustees' meeting was held on the evening of the second Tuesday of every month. The September 1995 meeting was held on the evening of Tuesday, September 12, 1995. Appellant learned earlier on September 12, in a letter dated August 30, 1995, that if he did not obtain a physical from Dr. Gilliam within the ten days following August 30, 1995, he would be terminated. Obviously, such a late notification did not give appellant enough time to comply with the terms of the letter. Upon learning of the contents of the letter appellant attended the trustees' meeting that evening. Appellant knew from the contents of the letter that failure to obtain the physical would result in his termination. The letter is unequivocal. However, the evidence presented showed that rather than go to the meeting to clear up any miscommunication or ask for a continuance, appellant merely contrived more excuses for his nonperformance in obtaining the physical exam.

Appellant's failure to exercise his right to be heard in an effective manner cannot now be blamed on appellee or the trial court. Appellant received adequate notice of the hearing to offer any objections he may have had. Appellant was permitted to present his version of events. He did not attempt to introduce any evidence or present any witnesses. Thus, the trial court did not abuse its discretion when it found that appellant received due process of law. Additionally, to address appellant's argument in his first assignment of error, we find that the manifest weight of the evidence supported the trial court's holding.

▮ The second issue appellant raises in his second assignment of error is whether the trial court erred by holding a *de novo* trial. R.C. 2506.03(A) provides that guidelines for the hearing of an administrative appeal. The section states:

"The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of

the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:

" * * *

"(3) The testimony adduced was not given under oath;

" * * *

"(5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from.

"If any circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party."

The section provides that a *de novo* review will not occur on appeal unless one of the express conditions apply. In the case *sub judice* it is clear that the appellant's testimony was not given under oath. Additionally, there was no transcript filed for the appeal in this matter. Thus, the trial court had the authority to hear the appeal upon the transcript, if one would have been admitted and *such additional evidence as may be introduced by any party.* The trial court conducted the appeal pursuant to the statutory guidelines, and both parties were rightfully permitted to introduce new evidence. The court has the power *sua sponte,* pursuant to R.C. 2506.03(A), to allow the introduction of new evidence if one of the above-stated exceptions applies.

We, therefore overrule appellant's second assignment of error. The judgment of the Marion County Common Pleas Court is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and SHAW, JJ., concur.