[Cite as *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2019-Ohio-3237.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. BRIAN M. AMES, | : | **O P I N I O N** |
| Relator-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-P-0036** |
| PORTAGE COUNTY BOARD OF COMMISSIONERS, | : | |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2016 CV 00067.

Judgment: Affirmed in part, reversed in part, and remanded.

*Brian M. Ames,* pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator-Appellant).

*Victor V. Vigluicci,* Portage County Prosecutor, and *Timothy J. Piero,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Respondent-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Brian M. Ames, appeals from the judgment of the Portage County Court of Common Pleas granting summary judgment in favor of appellee, the Portage County Board of Commissioners. At issue is (1) whether the trial court properly found appellant's causes of action frivolous; (2) whether the court properly granted summary judgment on five of the 15 counts alleged in his complaint; and (3) whether

the court properly struck appellant's amended complaint.  We affirm in part, reverse in part, and remand the matter for further proceedings.

{¶2}  On January 28, 2016, appellant filed his initial complaint, which alleged 15 violations of Ohio's Open Meetings Act, pursuant to R.C. 121.22.  After appellee filed its answer, appellant, on March 15, 2016, filed an amended complaint which alleged 40 violations.  On the same date, appellant also filed a motion to disqualify the trial judge, asserting she had personal knowledge of facts in dispute.  Appellee subsequently filed a motion to strike the amended complaint.

{¶3}  On March 23, 2016, the trial judge recused herself and requested the Supreme Court assign a judge to the matter.  In the same order, the judge set a deadline for responding to interrogatories as well as a date for appellee to respond to appellant's amended complaint.  Prior to recusal, the judge did not specifically rule on the motion to strike.  On April 14, 2016, a different judge was assigned to the case and a status conference was held on June 1, 2016.  At the conference, the judge set aside the deadlines set forth in the recusal order and stated he would read all pending motions, including the motion to strike, and issue orders accordingly.  The judge subsequently granted appellee's motion to strike the amended complaint and ordered the case to proceed on the original complaint.

{¶4}  Both parties filed motions for summary judgment on the original complaint.  And, on May 10, 2018, the trial court granted appellee's motion on all counts and, in turn, denied appellant's motion.  The trial court additionally found appellee committed frivolous conduct in filing the complaint, pursuant to R.C. 121.22(I)(2)(b) and R.C. 2323.51(A).  After a hearing on damages, the trial court determined appellee suffered

no damages by appellant's conduct. Appellant now appeals and assigns three errors for our review. The first assignment of error provides:

{¶5} "The trial court erred in finding frivolous conduct without following the process of law set forth in R.C. 2323.51(B) violating relator-appellant's procedural and substantive rights of the Due Process Clauses of the Fourteenth Amendment and Article I, Section 16 of the Ohio Constitution."

{¶6} In his complaint, appellant sought statutory damages for violations of Ohio's Open Meetings Act, R.C. Chapter 121, as well as injunctive relief ordering appellee to amend its procedural rules in a manner that is consistent with the law. The trial court found appellant's complaint raised no genuine issues of material fact and that appellee was entitled to judgment as a matter of law. The court further determined, in light of the allegations, as well as appellant's selective statement of relevant law, the filing of the complaint constituted frivolous conduct.

{¶7} R.C. 121.22(I)(2)(b) provides:

{¶8} If the court of common pleas does not issue an injunction pursuant to division (I)(1) of this section and the court determines at that time that the bringing of the action was frivolous conduct, as defined in division (A) of section 2323.51 of the Revised Code, the court shall award to the public body all court costs and reasonable attorney's fees, as determined by the court.

{¶9} Here, the court did not issue injunctive relief and the court found appellant's conduct frivolous, as defined in R.C. 2323.51(A)(2)(a)(iii) and (iv), which provide:

{¶10} "Frivolous conduct" means * * *:

{¶11} (a) Conduct of [a] * * * party to a civil action * * * that satisfies any of the following:

{¶12} * * *

3

**{¶13}** (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**{¶14}** (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶15}** Appellant contends the trial court violated his right to due process by concluding his conduct was frivolous because, pursuant to R.C. 2323.51(B), either the court on its own or appellee, through a motion for sanctions, was required to allege and the matter would proceed to a hearing not more than 30 days after the entry of judgment on liability. Because the court found his conduct frivolous without a hearing, he claims the trial court violated the procedures set forth under R.C. 2323.51(B).

**{¶16}** We initially point out that the concurring/dissenting opinion, designates the trial court's frivolous-conduct finding (1) as moot and (2) as dicta. With respect to the mootness issue, the dissent points out that appellee did not seek fees and no fees were awarded. Because appellant suffered no damages from the finding, the dissent maintains there is no need to engage in a due process analysis. Although appellant suffered no direct deprivation of property, he could nevertheless suffer collateral consequences from the frivolous-conduct finding. A determination that a litigant has engaged in frivolous conduct may be used in a future proceeding where the litigant is an alleged vexatious litigator, pursuant to R.C. 2323.52. The Supreme Court has observed:

**{¶17}** "The purpose of the vexatious litigator statute is clear. It seeks to prevent abuse of the system by those persons who persistently and habitually file lawsuits without reasonable grounds *and/or otherwise engage in frivolous conduct in the trial courts of this state.* Such conduct clogs the court dockets, results in increased costs, and oftentimes is a waste of judicial resources—resources that are

4

supported by the taxpayers of this state. The unreasonable burden placed upon courts by such baseless litigation prevents the speedy consideration of proper litigation." (Emphasis added.) *Mayor v. Bristow*, 91 Ohio St.3d 3, 13 (2000) quoting *Cent. Ohio Transit Auth. v. Timson*, 132 Ohio App.3d 41, 50 (10th Dist.1998).

{¶18} The relevance of a frivolous-conduct finding to a potential vexatious litigator allegation provides a sound basis for addressing the due-process problem inhering R.C. 121.22(I)(2)(b).

{¶19} In support of the position that the finding in this case is dicta, the dissent cites *Davis v. Eachus*, 4th Dist. Pike No. 04CA725, 2004-Ohio-5720. In *Davis*, the trial court judge made a passing reference to a plaintiff's civil causes of action as potentially frivolous. *Davis*, however, involved neither R.C. 121.22(I)(2)(b) nor R.C. 2323.51 and the trial court's use of the term "frivolous" appears to be a colloquial, rather than a technical, reference. In this case, the trial court's conclusion that appellant's conduct was frivolous was a legal conclusion, premised upon the statutory definition of frivolous conduct and represented a formal finding pursuant to R.C. 121.22(I)(2)(b) and R.C. 2323.51. Given the formal nature of the conclusion, we disagree with the manner in which the dissent frames the trial court's determination. With the foregoing in mind, R.C. 2323.51(B)(1) provides:

{¶20} Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section. (Emphasis added).

5

**{¶21}** R.C. 121.22(I)(2)(b) states that, to the extent the record supports a finding under R.C. 2323.51(A), a claim under Ohio's Open Meetings Act may be found frivolous by the court. Further, as appellee points out, there is no provision *requiring* a hearing on this issue and R.C. 2323.51(B)'s statutory due process provisions do not apply because the court must make a frivolous conduct determination "at that time" it denies injunctive relief. Appellee's points are consistent with the language of the statutes at issue; these points fail to appreciate, however, the overarching import of a litigant's constitutional right to due process.

**{¶22}** The Fourteenth Amendment of the United States Constitution provides: "nor shall any state deprive any person of life, liberty, or property without due process of law." "'Fundamental due process requires 'notice' sufficient to apprise the defendant of the action's pendency so that objections by the defendant may be presented.'" *Crist v. Battle Run Fire Dist.*, 115 Ohio App.3d 191, 197 (3d Dist.1996) quoting *Sampson v. Hooper Holmes, Inc.*, 91 Ohio App.3d 538, 540 (9th Dist.1993). Further, "[a] fundamental requirement of due process is 'the opportunity to be heard.' *Grannis v. Ordean,* 234 U.S. 385, 394. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965). In order to preserve a plaintiff's constitutional right to due process, we conclude, despite the lack of any mandate in the statute, R.C. 121.22(I)(2)(b) requires the trial court to notify a party of its intention to find his or her conduct frivolous, set a date for a hearing, and conduct that hearing so the party can defend against the potential consequence of being deprived of his or her property in the form of a fee award.

**{¶23}** We acknowledge that R.C. 2323.51(B)(1) states that its provisions apply "except as otherwise provided" in R.C. 121.22(I)(2)(b). And R.C. 121.22(I)(2)(b) states

6

that if the court does not issue an injunction and the court determines "at that time" the plaintiff's conduct in bringing the action was frivolous, it shall award costs and reasonable fees. The statute plainly states that a court must make a frivolousness finding and award costs and reasonable fees simultaneously with its decision to deny an injunction. As such, the plain language of the statute would ostensibly require the trial court to proceed to make a finding of frivolousness and a cost/reasonable-fee determination without a hearing. Because plain language would negate a plaintiff's constitutional right to due process, however, such a result is unworkable and absurd.

{¶24} "The primary rule in statutory construction is to give effect to the legislature's intention" by looking to the language of the statute. *Cline v. Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97 (1991); *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130 (1973). When there is no ambiguity, a court must follow the language employed by the legislature "making neither additions nor deletions from words chosen by the General Assembly." *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶23. "We 'do not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.'" *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶8, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347 (1994).

{¶25} With this in mind, "[i]t is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid [an unreasonable or absurd] result." *State ex rel. Cooper v. Savord*, 153 Ohio St. 367, (1950), paragraph one of the syllabus. The absurd-result exception to the plain-meaning rule provides "that 'interpretations of a statute which would

7

produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.'" *Lawson v. FMR, L.L.C.*, 571 U.S. 429, 471 (2014) (Sotomayor, J., dissenting), quoting *Griffin v. Oceanic Contrs., Inc.*, 458 U.S. 564, 575 (1982). With respect to this exception, the United States Supreme Court has observed:

{¶26} There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. * * * When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" [*Ozawa v. United States*, 260 U.S. 178, 194, (1922)] this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, [*Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, (1928)] however clear the words may appear on "superficial [inspection]." [*Helvering v. New York Trust Co.*, 292 U.S. 455, (1934).] The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. (Some citations omitted.) *United States v. Am. Trucking Assns.*, 310 U.S. 534, 543–544 (1940).

{¶27} "The absurd-result exception to the plain-meaning rule of construction 'entails the imputation of legislative intent based on the judge's perception' and 'vastly expands the [c]ourt's authority.'" *State ex rel. Clay v. Cuyahoga Co. Medical Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶26, quoting Manning, *The Absurdity Doctrine*, 116 Harv.L.Rev. 2387, 2476 (2003). Accordingly, courts should

8

exercise restraint in applying the absurd-results doctrine, utilizing it in only those cases where the plain language of a statute results in an obviously unintended outcome. *Clay*, *supra*.

{¶28} Here, our research has failed to reveal any authority discussing the legislature's intention in enacting R.C. 121.22(I)(2)(b). Nevertheless, we can reasonably infer that the purpose of R.C. 121.22(I)(2)(b) is to discourage frivolous filings, recognizing that such conduct will result in the mandatory award of costs and reasonable fees. Given this purpose, it does not follow that the General Assembly intended to deprive a plaintiff of his or her right to due process vis-à-vis a determination of the frivolous conduct issue. Accordingly, even though the letter of the statute states the determination must occur "at that time" the court denies injunctive relief, giving the statute its plain meaning would either: (1) defeat due process or (2) require the court to hold a hearing on the issues relating to frivolousness prior to announcing the determination on injunctive relief in order to preserve due process. The former is plainly contrary to fundamental constitutional jurisprudence, and the latter would produce odd, cumbersome, and absurd results.

{¶29} With respect to the first outcome, due process inheres all proceedings where the deprivation of life, liberty, or property is at stake. *See* Fourteenth Amendment, United States Constitution. Plainly, a party facing a deprivation of property through a mandatory order requiring him or her to pay costs and reasonable attorney fees is entitled to due process under such circumstances. Regarding the second outcome, if court announces its intention to hold a hearing on the issue of frivolous conduct, it necessarily follows it has already determined injunctive relief would be denied; to comply with the statute as written, however, the court is prohibited from

9

formally announcing its decision as it relates to injunctive relief until it has made a determination on the frivolous conduct issue. Such a procedure elevates form over substances because it requires a court to hold a hearing on the frivolous conduct issue without a dispositional order on the principle issue of whether the public body is liable.

{¶30} We accordingly conclude it would be unreasonable and nonsensical to give the "at that time" clause set forth in R.C. 121.22(I)(2)(b) its plain meaning. The intention of the legislature in enacting this provision is to deter frivolous conduct and that intention is not advanced by requiring a court to make a frivolous conduct finding at the time it denies injunctive relief. Although contrary to the letter of the statute, we hold a trial court may deny injunctive relief and, upon such an order, alert the plaintiff of its intention to hold a hearing on the frivolous conduct issue to preserve his or her right to due process as well as the orderly and coherent administration of justice.

{¶31} For the foregoing reasons, we reverse the trial court's finding of frivolousness on due process grounds. With respect to damages, the trial court did not award appellee fees or costs; that issue was not appealed and thus is barred by res judicata. On remand, therefore, the trial court may elect to do nothing, and leave the finding of frivolousness vacated, or conduct a hearing on the issue of frivolousness. If it elects to proceed with the latter, it must provide notice to the parties, schedule a hearing, and conduct the same. We therefore conclude the matter must be reversed and remanded for the trial court to proceed as it deems appropriate.

{¶32} Appellant's first assignment of error has merit.

{¶33} Appellant's second assignment of error provides:

**{¶34}** "The trial court erred in denying Ames' motion for summary judgment and in holding that suspended meetings that were held were regularly scheduled meetings rather than special meetings (Counts I, II, III, V, and XI)."

**{¶35}** Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers,* 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27.

**{¶36}** To prevail on a motion for summary judgment, the moving party has the initial burden to affirmatively demonstrate that no genuine issue of material fact exists to be resolved in the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts demonstrating the existence of a genuine issue of fact to be litigated. *Id.* at 293, citing Civ.R. 56(E). If the moving party's burden is not met in the first instance, the burden never shifts to the nonmoving party, and the motion for summary judgment must be denied. *Id.*

{¶37} Appellant contends five alleged special meetings, all occurring in 2014, were held without the requisite 24-hour notice mandated by Resolution 14-0025. And appellant maintains the trial court erred by relying on "the unprovable statement that 'no news media made any request of any of the Board's meetings let alone its special meetings.'"

{¶38} R.C. 121.22(F) provides:

{¶39} Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours' advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting.

{¶40} Resolution 14-0025 provides: "Special meetings may be held as often as deemed necessary, at which the Board of Commissioners may take any action that is not restricted by law to a particular regular session. Special sessions require a 24-hour notice and may be held at a location other than the usual office at the county seat * * *."

{¶41} R.C. 121.22(F) appears to only require 24-hour notice of a special meeting to the news media that request such notification. Resolution 14-0025, however, states that special meetings require 24-hour notice regardless of whether the media requests notification.

{¶42} Pursuant to Resolution 14-0024, in 2014, appellees reserved Tuesdays and Thursdays as regular meeting days. Appellant claims that although the meeting held on Tuesday, February 11, 2014 (the subject of Count I) was designated a regular meeting, it was transformed into a special meeting because it commenced at

12

approximately 1:00 p.m. rather than 10:30 a.m., as it was advertised. Initially, appellant set forth no authority for the proposition that a delay in a regular meeting's starting time changes that meeting into a special meeting. Appellant, as movant, was required to demonstrate no genuine issue of material fact on this point. He failed to do so and without this necessary premise, appellant's argument fails. Moreover, appellee produced evidence, via affidavit, that notice of the February 11, 2014 meeting was published in the Record-Courier, a daily newspaper, on February 8, 2014. Accordingly, even if we assume the meeting was a special session, sufficient notice was provided. The trial court did not err in granting appellee summary judgment on Count I.

{¶43} Appellant next claims that the meeting held on Tuesday, February 18, 2014 (the subject of Count II) was a special meeting because it was not regularly scheduled. As discussed above, Resolution 14-0024 pre-designated Tuesdays and Thursdays for regular meetings. Although the Resolution also states that Tuesday meetings would be suspended unless appellee deemed it necessary to conduct business, this does not imply meetings that convened on Tuesdays were special. Again, appellee produced evidence that notice of the meeting was published in the Record Courier and that notice stated appellees would convene for a "regular business meeting." In light of these points, appellant failed to meet his initial burden of establishing the February 18, 2014 meeting was a special meeting. Hence, appellee was entitled to summary judgment on Count II.

{¶44} Next, appellant asserts the special meeting held on Monday, March 10, 2014 (the subject of Count III) was held with inadequate notice. Appellant acknowledges notice was given on appellee's calendar on Friday, March 7, 2014; he contends, however, the notice was not posted until 4:27 p.m. Because, he argues,

there was only three minutes remaining in the business/working day, and the special meeting was scheduled to commence at 9:00 a.m. on Monday, the public had only one hour and three minutes notice. We do not agree with this construction.

{¶45} Resolution 14-0025 does not state notice of a special meeting must be given 24 business/working hours before such a meeting is held. Moreover, appellee produced affidavit evidence demonstrating it posted the notice publicly and sent notice to local media outlets to afford the public additional knowledge of the public meeting. Appellant failed to rebut these points and additionally failed to produce any evidence that notice, per R.C. 121.22(F) or the resolution, required 24 business/working hours to be effective. Appellee was entitled to summary judgment on this count.

{¶46} Appellant next claims the notice for the special meeting held on Monday, March 17, 2014 (the subject of Count V) was inadequate because it stated the meeting would commence at 11:00 a.m., but the meeting actually began at 1:00 p.m. Appellant does not provide any statutory authority or case law to support his claim that a delay in the commencement of a meeting fatally undermines an otherwise effective notice to the public. He accordingly assumes evidence or information he was required to produce to shift the burden to appellee.

{¶47} Moreover, appellee, via affidavit, clarified that the purpose of this meeting was to enter executive session to discuss employment issues. Two individuals had appointments, one at 11:00 a.m. and one at 1:00 p.m. The 11:00 a.m. appointment was cancelled by the individual scheduled to appear and thus executive session was postponed until 1:00 p.m. Appellee noted the purpose of the meeting did not change. The explanation for the delay is reasonable and unrebutted. And because appellant

14

offered no evidence to establish the delay vitiated the original notice, appellee was entitled to summary judgment on Count V.

{¶48} Finally, appellant argues the notice of the special meeting held on September 29, 2014 (the subject of Count XI) failed to provide adequate notice because it stated the meeting would commence at 11:30 a.m., but instead began at 12:13 p.m. As emphasized in our discussion of the March 17, 2014 meeting, appellant failed to provide any authority to support his position that a delay in commencement defeats otherwise proper notice. He therefore failed to shift the burden to appellee. Hence, the trial court did not err in granting summary judgment in appellee's favor on this Count.

{¶49} Appellant's second assignment of error lacks merit.

{¶50} Appellant's third assignment of error provides:

{¶51} "The trial court erred in granting, after it had been denied 173 days prior, the Board's motion to strike appellant's amended complaint, thereby dismissing the actions Ames' brought under R.C. 121.22 after the two-year statute of limitations had run."

{¶52} Preliminarily, the recused judge never granted or denied appellee's motion to strike the amended complaint. Although the judge, in her judgment recusing herself, stated appellee would have 90 days from that entry to respond to the amended complaint, no formal order was entered on the motion to strike. During the June 2016 status conference, the newly-appointed judge discussed the status of the motion to strike the amended complaint with the parties. The judge asked appellant if he wished to respond to the pending motion to strike and appellant stated he had previously responded. At no point did appellant assert that appellee's motion had been formally

15

denied and, when the prosecutor asked about the deadlines set by the recused judge, the appointed judge stated "those dates are off."

**{¶53}** We initially point out it is not entirely clear that the recused judge was authorized to set the deadline; after all, the deadline was set simultaneously with the judge's order recusing herself. Even assuming the deadline set in the recusal order was a valid case management order, however, it is well established that a trial court has the authority to control its own docket. *See, e..g., State v. Unger,* 67 Ohio St.2d 65, 67 (1981). Simply because the recused judge set a deadline does not imply that order was immutable. Appellee's motion to strike remained pending and the appointed judge was obligated to rule upon the same. And it would appear appellant agreed with this point. At the status conference, appellant did not argue the recused judge had, perhaps implicitly, overruled appellee's motion to strike by setting the deadline. To the contrary, appellant represented to the appointed judge that he had responded to the motion to strike and did not object to the judge entertaining the arguments advanced in the motion and responsive pleading.

**{¶54}** Appellant further argues that upholding the judge's order striking the amended complaint is unjust because the additional claims advanced therein are barred by the two-year statute of limitations. *See* R.C. 121.22(I)(1). We do not agree.

**{¶55}** A review of the amended complaint reveals the great balance of the additional claims took place in 2015. The trial court issued its order striking the amended complaint on September 12, 2016. Appellant had the opportunity to file another action including the additional claims within the limitations period, or seek reconsideration of the order, but elected against these courses of action. Appellant's argument is therefore unavailing.

16

**{¶56}** The third assignment of error is without merit.

**{¶57}** For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

THOMAS R. WRIGHT, P.J., concurs,

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

_____

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

**{¶58}** I would affirm the judgment of the trial court below.

**{¶59}** In regard to Mr. Ames' first assignment of error and his contention the trial court violated the procedures set forth under R.C. 2323.51(B) and thereby violated his right to due process by concluding his conduct was frivolous without a hearing, I agree with the majority that R.C. 121.22(I)(2)(b) states that, to the extent the record supports a finding under R.C. 2323.51(A), a claim under Ohio's Open Meetings Act may be found frivolous by the court. I also agree that there is no provision *requiring* a hearing on this issue. R.C. 2323.51(B)'s statutory due process provisions do not apply because the court must make a frivolous conduct determination "at that time" it denies injunctive relief.

**{¶60}** The majority goes on to rightly acknowledge that the plain language of the statute would "ostensibly require the trial court to proceed to make a finding of

17

frivolousness without a hearing," which would indeed deny the litigants the due process protections afforded by the Federal and Ohio constitutions.

{¶61} The Fourteenth Amendment to the United States Constitution provides: "nor shall any state deprive any person of life, liberty, or property without due process of law[.]" The Ohio Constitution, Article I, Section 16, provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

{¶62} "'Fundamental due process requires 'notice' sufficient to apprise the defendant of the action's pendency so that objections by the defendant may be presented.'" *Crist v. Battle Run Fire Dist.*, 115 Ohio App.3d 191, 197 (3d Dist.1996), quoting *Sampson v. Hooper Holmes, Inc.*, 91 Ohio App.3d 538, 540 (9th Dist.1993). Further, "[a] fundamental requirement of due process is 'the opportunity to be heard.' *Grannis v. Ordean*, 234 U.S. 385, 394 [1914] * * *. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

{¶63} It is apparent these due process requirements were omitted by the General Assembly when R.C. 121.22(I)(2)(b) was drafted. Given the plain language excepting R.C. 122.22 from the frivolous conduct statute, R.C. 2323.51, it is fair to assume the exclusion was intentional. We must also be mindful of the admonition that "[t]he first rule of statutory construction is that a statute which is clear is to be applied, not construed." *Vought Indus., Inc. v. Tracy*, 72 Ohio St.3d 261, 265 (1995).

18

{¶64} While it may be fairly argued that despite the lack of any mandate in the statute, R.C. 121.22(I)(2)(b) should require the trial court to notify a party of its intention to find his or her conduct frivolous, set a date for a hearing, and conduct that hearing so the party can defend against the potential consequence of being deprived of his or her property in the form of a fee award, I am of the opinion that we need not undertake the analysis of whether the trial court was required to follow all R.C. 2323.51 procedures before it could enter a finding of frivolous conduct in this case because the trial court did not award attorney fees. The failure to award fees and costs was not appealed and thus is res judicata.

{¶65} The sanctions contemplated by the frivolous conduct statute are in the form of attorney fees incurred as the direct result of the frivolous conduct. Inasmuch as there were no attorney fees awarded by the trial court, the trial court was not obligated to follow that statute's requirements. *See Davis v. Eachus*, 4th Dist. Pike No. 04CA725, 2004-Ohio-5720, ¶18.

{¶66} Here, as in *Davis*, "we note that the trial court was apparently offering an observation and expressing its opinion as to the merits of the appellant's claims. Those observations are essentially dicta and, even if improper, constitute at most harmless error. See Civ.R. 61." *Id.* This is especially true in this matter because the Portage County Board of Commissioners did not file a motion for R.C. 2323.51 sanctions, and the trial court is precluded by the plain language of the frivolous conduct statute from raising the R.C.2323.51 sanctions issue sua sponte. *Shaffer v. Mease*, 66 Ohio App.3d 400, 409 (4th Dist.1991).

{¶67} I concur with the majority's conclusions on the remaining assignments of error.